IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN D. HORTON | : | |
| | : | |
| V. | : | C.A. NO. 04-2245 |
| | : | |
| UNITED STATES OF AMERICA | : | |

WEINER, J.                                                                                     September 8, 2005

## **FINDINGS OF FACT**

1. John D. Horton filed this action against the United States alleging claims under the Federal Tort Claims Act sounding in assault, battery, false imprisonment, false arrest, abuse of process, negligent infliction of emotional distress, libel, slander and defamation. As the United States is the defendant, the action was tried to the court.

2. Horton was hired by the Department of Veterans Affairs (VA) in February 2003 to be a Library Technician at the Philadelphia Veterans Medical Center (PVMC). Horton learned of the opening in October 2002, while living in Seattle. He

interviewed for the position by telephone in November. After learning he was hired, Horton moved to the Philadelphia area.

3. At the time Horton worked at PVMC, Robert Lyle was the Director of the Medical Library and Horton's first line supervisor. He hired Horton.

4. Horton worked at PVMC until May 13, 2003. From the time he was hired until that day, no adverse employment actions were taken against him.

5. Joseph Lytle is an Employment Retention Specialist at PVMC. He is a law school graduate, but not admitted to the bar. After Horton had been hired, Lytle received from the Office of Personnel Management (OPM) in Washington a Suitability Determination prepared by OPM. It advised PVMC that Horton was not suitable for federal employment due to allegedly untruthful answers on his employment application. Based on this information, Lytle initiated a termination action against Horton.

6. The OPM report did not debar Horton from federal employment nor mandate that Horton be fired. The VA had discretion to retain Horton if it chose to do so.

7. On Horton's Declaration for Federal Employment, dated February 10, 2003, he answered "No" to the question "During the last 5 years, have you been fired from any job for any reason, did you quit after being told that you would be fired, did you leave any job by mutual agreement because of specific problems, or were you debarred

from Federal employment by the Office of Personnel Management or any other Federal agency?"

8. He also answered "No" to the question "During the last 10 years, have you been convicted, been imprisoned, been on probation, or been on parole?"

9. Prior to September 13, 2000, Horton had been employed at Shaw Air Force Base. On that date, Horton entered into a negotiated settlement concerning his employment. It was agreed that Horton would submit a letter of resignation for personal reasons. In exchange for his resignation, a letter of termination dated March 15, 2000 would be removed from his records.

10. Horton was arrested on August 23, 2001 at Pope Air Force Base, after he attempted to enter the base. He was charged with eight criminal violations including trespassing, illegal entry of a military reservation, destruction of government property, escape from arrest, unauthorized use of a military ID, profane or indecent language, obstructing a police officer, and driving without a license and registration card.

11. On January 8, 2002, Horton was convicted of two misdemeanor counts – destruction of government property and obstructing a police officer – after a bench trial before a United States Magistrate Judge. He was sentenced to thirty days imprisonment on the first offense and ten days on the second. The ten day sentence

was suspended. He was also ordered to pay $15 restitution. His convictions were affirmed by the United States District Court on February 7, 2002. Horton then appealed to the United States Court of Appeal for the Fourth Circuit.

12. Before the Fourth Circuit, the government conceded that Horton was entitled to a jury trial before a district judge on the charges. On August 14, 2003, the Fourth Circuit vacated the convictions and remanded the case to the district court. On February 2, 2004, the district court dismissed the charges.

13. On May 12, 2003, Horton was asked to resign from PVMC by Joseph Lytle, for gross falsification, misstatement or concealment of material facts in connection with his employment. On that date he was still a probationary employee. The specific misstatements concerned his failure to state he had been fired from Shaw Air Force Base and his failure to state he had been found guilty of the two charges at Pope Air Force Base. He refused to resign and was officially terminated from the PVMC on May 13, 2003.

14. On May 13, Lytle directed Officer Vincent LaBrice, a VA criminal investigator, to escort Horton to Human Resources, so that he could be given a copy of the termination letter, then out of the building.

15. Robert Lyle was present in the library when LaBrice arrived to remove Horton around 2:30 p.m. Horton told Lyle that he "knew this was coming," but that he

expected it would take a year to complete his background check and that by that time it would be too late to fire him.

16. Lyle could not hear the entire conversation between Horton and LaBrice, but could see them. He did not see LaBrice ever touch, assail, threaten, batter or physically intimidate Horton. He heard Horton exclaim in a shrill voice "No" and "I don't want to go with you."

17. Horton clutched his backpack to his chest when LaBrice told him to follow him out. LaBrice asked Horton if he had anything dangerous in the backpack. Lyle observed LaBrice examine the contents of Horton's backpack. LaBrice did not remove anything from the pack.

18. Mark Marchino, a PVMC librarian, was also present when LaBrice confronted Horton. He also did not see LaBrice ever touch Horton.

19. LaBrice admitted that he touched Horton's backpack, put his hand into it, and observed its contents. He did so because, when he advised Horton he had to leave, Horton grabbed the pack abruptly, clutched it to his chest, and said he wouldn't leave without it. LaBrice examined the contents to ensure it contained no weapons. He then gave the backpack back to Horton, and Horton took it with him when he left.

20. Under VA rules, all parcels brought into PVMC are subject to search.

21. Horton asked LaBrice if he was under arrest, to which LaBrice responded no. Horton then said he was invoking his Fifth Amendment Rights and told LaBrice "you are dismissed." Horton refused to go to Human Resources. The termination letter was brought to the library, where Horton was given a copy and signed it. LaBrice then escorted him from the building, where he confiscated his parking decal and ID badge.

22. Horton initially testified that LaBrice used a "shoulder nudge" to prevent Horton from putting his hand into the backpack. He later characterized the action as a "striking," a "flinging," and a "gross violation."

23. Horton received no medical treatment arising from the incident. The backpack was not damaged. Regarding his claim for emotional distress, he testified he treated himself with a cup of green tea and now has a fear of police officers.

## CONCLUSIONS OF LAW

1. The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1346.

2. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(e).

3. Under the Federal Tort Claims Act, the United States waives governmental immunity for injuries "caused by the negligent or wrongful act or omission of any

employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  28 U.S.C. § 1346(b)(1).

4. The extent of the United States' liability under the FTCA is generally determined by reference to state law.  In re Orthopedic Bone Screw Product Liability Litigation, 264 F.3d 344, 362 (3d Cir. 2001).

5. Under Pennsylvania law, assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the plaintiff. Pahle v. Colebrookdale Twp., 227 F.Supp2d. 361, 374 (citing Renk v. City of Pittsburgh, 537 Pa. 68, 76 (1994)).

6. Horton has failed to establish by a preponderance of the evidence that LaBrice committed an assault and battery upon him.  Lyle, Marchino, and LaBrice testified consistently that LaBrice never touched Horton.  The only testimony was that LaBrice touched the backpack.  Horton's testimony was not credible because it was not consistent.  Each time he testified to the alleged touching, the touching became more severe and the event became more violent.

7. Under Pennsylvania law, the elements of false imprisonment are detention of the plaintiff and the unlawfulness of such detention.  Renk, 537 Pa. at 76.

8. Horton has failed to establish by a preponderance of the evidence that he was detained by LaBrice. LaBrice told him he was not under arrest. LaBrice's object was to escort Horton out of the building, not detain him in the building.

9. Under Pennsylvania law, the elements of false arrest are (1) the defendant acted with the intent to confine the plaintiff within boundaries fixed by him; (2) the defendant's act directly or indirectly resulted in such confinement; and (3) the plaintiff was conscious of this confinement or was harmed by it. Pennoyer v. Marriot Hotel Services, Inc., 324 F.Supp.2d 614 (E.D. Pa. 2004).

10. Horton has failed to establish by a preponderance of the evidence that LaBrice confined him or intended to confine him.

11. Under Pennsylvania law, to establish abuse of process the plaintiff must show the defendant used legal process against him, primarily to accomplish a purpose for which the process was not designed and harm has been caused to the plaintiff. Harris v. Brill, 844A.2d 567, 572 (Pa.Super 2004).

12. Horton has failed to establish by a preponderance of the evidence that LaBrice used any legal process against him.

13. Under Pennsylvania law, the elements of negligent infliction of emotional distress are: (1) plaintiff must be near the scene of an incident; (2) he suffered shock or distress resulting from a direct emotional impact caused by the sensory or

contemporaneous observance of the incident (as opposed to learning about it second hand); and (3) he must be closely related to the victim. Sinn v. Burd, 486 Pa. 146, 170-71 (1979).

14. Horton has failed to establish by a preponderance of the evidence that he suffered shock or distress resulting from being removed from PVMC. His testimony that he treated his emotional upset with a single cup of green tea is emblematic of the lack of merit of the claim.

15. Under Pennsylvania law, libel is the malicious publication of printed or written matter which tends to blacken a person's reputation and expose him to public hatred contempt or ridicule. Tucker v. Phila. Daily News 577 Pa. 598 (2004).

16. Slander occurs by words which are spoken that are defamatory. Solasko v. Paxton, 383 Pa. 419 (1956).

17. In an action for defamation, a plaintiff must prove (1) the defamatory character of the communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of its defamatory meaning; (5) understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm to the plaintiff; and (7) abuse of a conditionally privileged occasion. Maier v. Maretti, 488 Pa.Super. 276 (1995).

18. A complete defense to all civil actions that sound in defamation exists when it is found that a publication is substantially true and is proper for public information or investigation, and such publication has not been maliciously or negligently made. Tucker v. Philadelphia Daily News, 757 A.2d 938, 942 (Pa.Super. 2000).

19. Horton has failed to establish by a preponderance of the evidence his claims of libel, slander and defamation. On the date he was terminated from PVMC his conviction on the misdemeanor counts was still of record. The assertion in the letter of termination – that he lied on his employment application of having been convicted of a crime – was, therefore, substantially true at the time it was made. The fact that the convictions were later reversed is immaterial to their truthfulness when made. It was also substantially true that he had resigned from his job at Shaw Air Force Base in order to avoid being fired. Horton has failed to establish by a preponderance of the evidence that these assertions were malicious. He also failed to establish they were published to anyone but himself.

20. Judgment on the merits will be entered in favor of the United States and against John D. Horton.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN D. HORTON                    :
                                  :
                                  :
                                  :
        V.                        :        C.A. NO. 04-2245
                                  :
                                  :
                                  :
UNITED STATES OF AMERICA          :

## **ORDER**

Judgment on the merits is ENTERED in favor of defendant United States of America and against plaintiff John D. Horton.

IT IS SO ORDERED.

_____
CHARLES R. WEINER